UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**MICHAEL HERRICK and**
**JENNIFER GAGE,**

    **Plaintiffs,**

vs.                                              **Case No. 1:11-cv-00624-MCA/WDS**

**OFFICER LEAH KELLY in her official and**
**Individual capacity as an employee of the**
**City of Albuquerque Police Department, AND**
**OFFICER JENNIFER JARA in her official and**
**Individual capacity as an employee of the**
**City of Albuquerque Police Department,**

    **Defendants.**

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO ENFORCE SETTLEMENT AND RELEASE TERMS CONTAINED IN THIRD PROPOSED SETTLEMENT AGREEMENT**

COME NOW Plaintiffs' by and through their counsel of record, Frances Carpenter, and hereby provides this as their response to Defendants' Motion to Enforce Settlement and Release Terms Contained in Third Proposed Settlement Agreement.

**I. Facts Germaine to This Motion**

On February 29, 2012 the parties entered into a settlement agreement which was placed on the record and as stated, ""[w]e've reached a settlement. And the purpose of this hearing is to put the terms of the settlement on the …record. The parties have reached an agreement as follows." See page 2 of the Transcript of the Record Attached hereto as Exhibit C. The terms of the agreement are also stated verbatim in Plaintiffs' draft of the Settlement Release and Agreement attached hereto as Exhibit B. Further, Judge Torgerson asked the parties if what he

1

had stated on the record was our understanding of the terms and everyone including Mr. Junco stated it was. Page 4-5 Exhibit C. Judge Torgerson also stated, "[h]opefully you can get it accomplished within – at least her paperwork accomplished within thirty days so you could submit it to Judge Armijo so we can get this case resolved, cause there is a trial setting". Page 7-8 Exhibit C.

It was not until March 14, 2012 that Plaintiffs' counsel received the first draft of defendants proposed settlement release and agreement[1] from Mr. Junco. Plaintiffs' counsel emailed this versions to Plaintiffs and was informed that the terms contained therein were unacceptable as they required them to agree and settle for much more than they had agreed to at the settlement conference without due consideration and that they would not accept anything more than what they had agreed to on the record. Defendants' Version One of the Settlement Agreement and Release Attached Hereto as Exhibit D. Counsel for Plaintiffs' emailed Mr. Junco and conveyed that Plaintiffs anticipated a mutual settlement agreement and release that was a direct reflection of what was actually agreed to on the record. Plaintiffs also understood that the release would contain language such as indemnification for medicals and other similar clauses contained in releases. See emails attached hereto as Exhibit A. Mr. Junco then requested a telephonic meeting which was held on March 19, 2012.

Plaintiffs through Plaintiffs' counsel have been exhaustively clear in all emails and throughout the March 19th telephone conference that Plaintiffs would only sign a release that reflected what they agreed to on the record and nothing more. Mr. Junco's responses in his emails and during the telephone conference was to state that the objected to paragraphs were standard clauses in all City releases and to exhaustively explain the "purpose" behind each

---

[1] Mr. Junco states throughout his motion (see e.g. para 6 and 17) that he has failed to attach the first and second draft of the settlement agreement due to lack of relevancy. This is confusing given it was these two agreements which seem to be the reason that he has filed said motion.

paragraph and why he would not do as requested by Plaintiffs, **to simply draft an agreement that reflects what was stated on the record.** See Exhibit A. On March 19, 2012 the parties met for close to two hours. During the entire telephone conference, counsel for plaintiffs continued to stress that what their clients had stated, as aforementioned, and that they would be happy to take Mr. Junco's statements back to their clients and try to see if they would be willing to reconsider. It should be noted that despite spending this lengthy amount of time on the phone, Mr. Junco was unwilling to take out paragraph two or make any substantial changes to his original settlement release and agreement, as reflected in version two of the settlement agreement, which was emailed to Judge Torgerson's chambers. Mr. Junco said he would make changes to version one and then Mr. Junco counseled Ms. Carpenter to take version two back and see if her clients would accept this version and Ms. Carpenter agreed that she would do so.

     Once again and in good faith, counsel for Plaintiffs emailed version two of the settlement agreement and release to plaintiffs and conveyed Mr. Junco's arguments and stated "purpose" behind the reasoning for each paragraph and why it deviated from the original on the record agreement. Plaintiffs again stated the same thing as previously conveyed to Mr. Junco: **they would only sign an agreement that reflects what was stated on the record.** Counsel for Plaintiffs' emailed Mr. Junco the same. See Exhibit A. A telephonic hearing was held with Judge Torgerson and version two as well as the transcript as to what was placed on the record was emailed to Judge Torgerson and it was only after the telephone conference with Judge Torgerson that Mr. Junco removed paragraph two and other provisions such as changing "reasonable amount of electricity" to "electricity" as reflected in version three, which **Plaintiffs have only seen for the first time as attached to Defendants' motion.**

**II. Sanctions Should Be Awarded to Plaintiffs' and Plaintiffs' Counsel**

Counsel for Defendants, Mr. Junco, should be sanctioned "for attempting to mislead the court as to Plaintiffs position and for unreasonably and vexatiously multiplying the proceedings by filing Defendants' Motion to Enforce the Settlement Agreement. Defendants mislead the court and vexatiously multiplied the proceedings and have prolonged the settlement of this matter for over thirty days by their actions as aforementioned, by filing said motion, and by stating as following in their Motion:

1. Mr. Junco filed his motion to enforce the "Third Proposed Settlement Agreement" yet Plaintiffs have never received said agreement and the first time Plaintiffs have seen said agreement is as attached to Defendants' Motion. As such, Plaintiffs are unclear as to how they have failed to agree to something that they have not been given a chance to review.

2. Mr. Junco states in paragraph 6 of his motion that he did not attached the first proposed agreement due to their inability to telephonically locate Plaintiffs' counsel to request a concurrence and due to page number limitations. Plaintiffs' counsel as well as her staff was available telephonically and never received a call from Defendants counsel or a voice mail indicating his request. Furthermore, Defense counsel has always communicated via email with Plaintiffs counsel and is unsure as to why he failed to do so in this instance. Last, there is no page limitation in filings in federal court but rather data size transmittal which is cured by attaching the document in multiple exhibits. Such is common knowledge to all who practice in federal court and certainly Mr. Junco's staff at the City Attorney's Office who regularly file and practice in Federal Court.

3. Mr. Junco states in his email dated March 20th (Exhibit A) that counsel for Plaintiffs' have "stated repeatedly here today, I am sure you will oppose". First, this sentence is a bit confusing

in the way it is drafted but if Mr. Junco is trying to suggest that Plaintiffs' counsel repeatedly stated that she opposed a filing of a motion to enforce, such is not true as counsel for Plaintiffs' was not aware that Mr. Junco would be filing said motion until she read the aforementioned email.

4. Mr. Junco maintains throughout his motion (see e.g. paragraph 7) that counsel for Plaintiffs stated that "her clients were 'fine' and had no objections". Plaintiffs' counsel has maintained, as reflected throughout the emails, Exhibit A, that she while she may not have any issues with certain paragraphs it was ultimately her clients that would have to agree to the terms and sign the document and as such she would have to submit Mr. Junco's version to her clients and see if they would agree. At the end of the telephone call on March 19th, Mr. Junco reiterated to Ms. Carpenter to go back to her clients and explain to them what he had said and see if they would agree. Ms. Carpenter responded that she was sure that they would not agree given he was unwilling to make the requested modifications, which were all the additions that fell outside of what was stated on the record. Mr. Junco admits as much in his own motion see para 19. Mr. Junco became very agitated stated that he had put in a lot of time in drafting his version to which Ms. Carpenter responded that she was sympathetic but that she did not believe this was necessary given the agreement was already drafted on the record transcript and that she was equally agitated given the parties as well as Judge Torgerson had spent a long day crafting an agreement that now he was making additions and changes to and refusing to draft an agreement that reflects what was stated on the record.

5. Mr. Junco conveys to the Court that counsel for Plaintiffs has been misleading and uncooperative. However, the contrary is true. Counsel for Plaintiffs has maintained throughout,

as stated herein, that her clients would not agree to anything more than what was agreed to on the record. In addition to what was stated on the record, Counsel for Plaintiffs stated to Mr. Junco during the March 19th telephone call that indemnification paragraphs and other like paragraphs such as language that speaks to Plaintiffs voluntarily agreeing to the terms, no admission of liability, etc were acceptable. Mr. Junco conveys to the court that counsel for Plaintiffs agreed to and otherwise stated that certain portions of the settlement agreement drafted by Mr. Junco were "fine" and as such Plaintiffs should be compelled to sign the same. Plaintiffs' counsel painstakingly went through each paragraph with Mr. Junco and stated what she knew her clients would not agree to such as the language proposed therein by Mr. Junco was broad and outside the scope of what was stated on the record and perhaps, if Mr. Junco was unwilling to remove said paragraphs in their entirety that he could reworded them to be more similar in kind to what was stated on the record that perhaps her clients may agree to said paragraphs. Mr. Junco then submitted version two, which was sent to Plaintiffs by counsel and Plaintiffs, as anticipated, rejected version two.

6. What followed was a series of emails (see Exhibit A) and a telephone conference with Judge Torgerson during which Mr. Junco's advanced his similar and lengthy talking points as advanced to Ms. Carpenter on March 19th. Judge Torgerson instructed counsel to submit their version of the proposed settlement release and agreement and that Judge Torgerson, without a hearing on the matter, would pick one. Despite the Judge's instructions, Mr. Junco has also submitted a request for hearing [Doc. 45] in which he states, "It is also the understanding of counsel for City Defendants that Magistrate Judge Torgerson was going to set a telephonic hearing in order to review the issues pertaining to the enforcement of settlement in this case".

[Doc. 45, para 2]. Once again, Mr. Junco attempts to multiply the proceedings in this matter and delay the settlement of this case, much to the prejudice of Plaintiffs.

### A. Legal Authority for Plaintiffs' Request for Sanctions

In *Hamilton v. Boise Cascade Express*, 519 F. 3d 1197, (10th Cir. 2008) an attorney who moved to compel defendants to pay settlement was sanctioned for misstating the reason for the defendants' refusal to pay. The sanctioned attorney, defendant Hammons, represented plaintiffs in the underlying race and sex discrimination suit against defendant Boise Cascade Express ("BCE"). One of the plaintiffs, Ms. Taylor, entered a settlement agreement with BCE. BCE, however, refused to pay the settlement until Taylor signed a stipulation dismissing her claim with prejudice. Each time BCE made this demand, it also demanded that plaintiffs return any documents obtained through discovery. Even though BCE had not made the document request a part of the settlement agreement, Hammons moved the court to "direct the Defendants to comply with the agreement [*i.e.*, pay up] without conditioning compliance with a return of documents . . . ." *Id*. at 1200 (brackets in original). BCE had seen the motion before it was filed and in a letter warned Hammons that the motion mischaracterized defendants' demands. Seven minutes after Hammons filed the motion, BCE emailed and faxed Hammons, explicitly informing him that the stipulation request and the document request were, at all times, separate obligations, but Hammons never read this correspondence. The district court sanctioned Hammons because **"Section 1927 targets vexatious and unreasonable multiplication of proceedings."** *Id*. at 1201 (emphasis added). On appeal, Hammons argued, *inter alia*, that his conduct was not sufficiently egregious, that his conduct was excused because BCE had failed to dispute the facts of his motion and that the district court miscalculated the award ($7,974.20.).

The Tenth Circuit, using an abuse of discretion standard, upheld the award noting that it did not matter how egregious Hammons's actions were **because the purpose of § 1927 is to compensate victims rather than to punish offenders. Therefore sanctions may be imposed without "finding a protracted course of vexatious conduct . . . ."** *Id*. at 1203 (emphasis added).

As for BCE's alleged failure to dispute the facts, the court held "[t]here is no general 'good Samaritan' duty to save an attorney from himself." *Id*. at 1204. The court noted that any duty to mitigate damages arises *after* counsel's § 1927 violation, and that the letters to Hammons were more than adequate to meet any ethical obligation BCE's counsel may have had.

Finally, Hammons's argument that the district court miscalculated the award was not based on appropriate authority. Hammons cited a number of FRCP Rule 11 cases for the proposition that an award should be limited to what is necessary to deter offenders. The court rejected this argument, once again noting that the purpose of § 1927 is to protect victims. Hammons also argued that **attorney's fees should be calculated using a lodestar method rather than using actual fees.** The court held that Hammons's argument erroneously relied on the application of fee shifting statutes in civil rights cases and that it was within the district court's discretion to choose the method of calculation.

This opinion holds that neither protracted nor bad faith misconduct is necessary to be sanctioned under § 1927. In plain words, an attorney may be sanctioned for a single incidence of action with "an empty head and a pure heart." *Id*. at 1202 (quoting *Braley v. Campbell*, 832 F.2d 1504, 1512 (10th Cir. 1987)).

As in this case, Mr. Junco has "multiplied these proceedings unreasonably, vexatiously, and recklessly" by filing a motion to enforce a settlement agreement that misstated opposing

8

counsel's position without a reasonable basis, costing his opponents a needless expense of $1,500.00 (attorney fees of $250.00 per hour multiplied by 6 hours). In addition the Court should levy a sanction in that amount against Mr. Junco personally under 28 U.S.C. § 1927 in the amount of $3,000.00 to deter such conduct in the future. It is, as stated in *Hamilton*, the district court's discretion in finding Mr. Junco's conduct objectively unreasonable and in determining the amount of the sanction. Similar to the *Hamilton* case and as the Court stated therein, there wasn't "any question that any reasonable person, much less an attorney of [Mr. Junco's] learned skills, . . . could have interpreted" Plaintiffs' counsel's emails, the agreement as put forth in the record, the conversation had between counsel on March 19th, and the Court's instruction to counsel. *Id.* at 281. "There could be no misinterpretation of their language." *Id.* Accordingly, as in *Hamilton*, Plaintiffs respectfully request that the Court find that Mr. Junco "ha[s] multiplied the proceedings unreasonably, vexatiously, and recklessly" by filing the Motion to Enforce the Settlement Agreement, making sanctions appropriate under 28 U.S.C. § 1927. *Id.*

WHEREFORE Plaintiffs respectfully request that the Court enter an order requiring Defendants to sign the Settlement Agreement and Release as attached hereto as Exhibit B and to enter sanctions in the amount of $4,500.00 as set forth herein, and for all other relief that the Court deems just and proper.

Respectfully submitted,

*/s/ Frances Carpenter*
Frances Carpenter
118 Wellesley Drive SE
Albuquerque, NM 87106
Ph: 505.314.8884 Fax: 505.265.1319
Email: frances@francescrockettlaw.com
*Attorney for Plaintiffs*

I hereby certify that a true and complete copy of the foregoing was delivered electronically this 28th  day of March 2012, to counsel for Defendants.


*/s/ Frances Carpenter*
Frances Carpenter